

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 17, 1996

Dr. Barry B. Thompson
Chancellor
Texas A&M University System
301 Tarrow, 7th Floor
College Station, Texas 77843-1122

Opinion No. DM-394

Re: Whether the City of College Station may expend funds on behalf of the George Bush Library at Texas A&M University (RQ-849)

Dear Dr. Thompson:

On behalf of the City of College Station (the "city"), you ask whether the city may spend public money, including hotel-motel occupancy taxes, on the George Bush Library (the "library"), now under construction on the Texas A&M University campus in College Station. *See* House Comm. on Land and Resource Management, Bill Analysis, S.B. 1018, 74th Leg., R.S. (1995); *see also* Educ. Code § 86.24(a). You state as follows:

> The George Bush Library Committee is seeking a financial commitment of $50,000.00 per year from the City of College Station, Texas. College Station is a chartered home-rule municipal corporation. The George Bush Library will be located in the corporate limits of College Station, Texas. In addition to being a center for research and scholarship, it is anticipated that the library will attract tourists to College Station.

You raise the following legal issues: whether the city has a legitimate public purpose for spending public funds on the George Bush Library, whether a requirement that the library stay open in each year that is funded constitutes adequate control to establish the public purpose, and whether the city is authorized to expend hotel-motel occupancy funds on the library.[1]

Article III, section 52 of the Texas Constitution provides in part:

> Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other

---

[1]You do not inquire about legal issues raised by a city's attempt to contract to provide $50,000 a year in future years. *See* Tex. Const. art. XI, § 6; *McNeill v. City of Waco*, 33 S.W. 322, 324 (Tex. 1895) (municipal obligations not payable from current revenues are subject to article XI, section 5 of Texas Constitution); *City of Wichita Falls v. Kemp Pub. Library Bd. of Trustees*, 593 S.W.2d 834, 837 (Tex. Civ. App.–Fort Worth 1980, writ ref'd n.r.e.) (same); *see also Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385, 390 (Tex. 1977) (contracts that contemplate successive performances and which are indefinite in duration can be terminated at will of either party).

Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit to or grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in any such corporation, association, or company.

This provision does not prevent the City of College Station from spending its funds to carry out a municipal purpose, even if another entity also benefits from the expenditure. *Barrington v. Cokinos*, 338 S.W.2d 133, 140 (Tex. 1960); *see State ex rel. Grimes County Taxpayers Ass'n v. Texas Mun. Power Agency*, 565 S.W.2d 258, 268 (Tex. Civ. App.--Houston [1st Dist.] 1978, writ dism'd). The city must receive adequate consideration for the funds it provides the university, and contractual or other controls must be in place to ensure that the public purpose will be carried out. *See* Attorney General Opinions DM-317 (1995), JM-1030 (1989), JM-324 (1985), MW-423 (1982), H-1123 (1978). The governing body of the City of College Station would ordinarily have discretion to determine, subject to judicial review, whether the proposed expenditure serves a public purpose, whether the city receives adequate consideration for its expenditure, and whether there are sufficient controls to ensure that the public purpose will be carried out. Attorney General Opinions DM-317 (1995), DM-256 (1993). However, the agreement described in your letter may be too general for the city government to make this decision. Since the $50,000 is apparently not designated for a specific program or function of the library; it may be difficult to determine whether this expenditure will actually benefit the city.[2] The "control" you describe, that the library will be open in each year that it is funded, does not state how may days of openness per year will be secured by the $50,000 or how the city will enforce the openness requirement attributable to its expenditure. Accordingly, the city council would be well advised to determine what city purpose or purposes will be served by the library, and limit the use of city funds to such purposes, subject to controls to ensure that the city purposes are carried out.

We now consider whether the city may spend hotel-motel occupancy tax funds on the library. Tax Code chapter 351 authorizes a municipality to adopt an ordinance imposing the tax. *See* Tax Code § 351.002. Section 351.101(a) of the Tax Code provides that

[r]evenue from the municipal hotel occupancy tax may be used only to promote tourism and the convention and hotel industry, and that use is limited to the following:

---

[2]Attorney General Opinion V-953 concluded that a county could not donate public money to an incorporated public free library, but it could contract for library privileges from a library. Attorney General Opinion V-953 (1949) at 4.

(1) the acquisition of sites for and the construction, improvement, enlarging, equipping, repairing, operation, and maintenance of convention center facilities or visitor information centers, or both;

(2) the furnishing of facilities, personnel, and materials for the registration of convention delegates or registrants;

(3) advertising and conducting solicitations and promotional programs to attract tourists and convention delegates or registrants to the municipality or its vicinity;

(4) the encouragement, promotion, improvement, and application of the arts, including instrumental and vocal music, dance, drama, folk art, creative writing, architecture, design and allied fields, painting, sculpture, photography, graphic and craft arts, motion pictures, radio, television, tape and sound recording, and other arts related to the presentation, performance, execution and exhibition of these major art forms; and

(5) historical restoration and preservation projects or activities or advertising and conducting solicitations and promotional programs to encourage tourists and convention delegates to visit preserved historic sites or museums:

(A) at or in the immediate vicinity of convention center facilities or visitor information centers; or

(B) located elsewhere in the municipality or its vicinity that would be frequented by tourists and convention delegates.

Section 351.101 sets out the exclusive purposes for which the tax may be spent. Attorney General Opinion JM-965 (1988) at 6. You do not identify any specific function of the George Bush Library for which funds contributed by College Station will be used, and your do not explain how the expenditure of the tax funds will carry out any of the five specific purposes enumerated in section 351.101 of the Government Code. The proposed expenditure is not within the purposes set out in section 351.101(a)(1), (2), or (4). Although section 351.101(3) might authorize expenditures for advertising the library to attract tourists to College Station, no such limitation appears to apply to the proposed expenditure. Finally, if the library could be characterized as a museum, section 351.101(5) would authorize the expenditure of hotel tax funds to conduct "solicitations and promotional programs to encourage tourists and convention delegates" to visit it, but

again, you have not indicated that the proposed expenditure would be subject to this limitation. The City of College Station may spend funds raised under chapter 351 of the Tax Code on the George Bush Library only if such limitations are imposed.

## S U M M A R Y

The City of College Station may, without violating article III, section 52 of the Texas Constitution, spend public funds on the George Bush Library to be established by Texas A&M University only if there is a city purpose for the expenditure, if the city receives adequate consideration for the expenditure, and if sufficient controls are attached to the transaction to ensure that the public purpose will be carried out. Hotel-motel occupancy taxes raised by the city under chapter 351 of the Tax Code may be spent only for the purposes expressly set out in section 351.101 of the code. No showing has been made that the tax funds proposed for allocation to the George Bush Library will be used for any purpose stated in section 351.101.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General